UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Tracy Lemay             )
                        )
    Plaintiff,          )
                        )
v.                      )    No. 17 CV 50110
                        )    Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting  )
Commissioner of Social Security, )
                        )
    Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Tracy Lemay appeals the Commissioner of Social Security's denial of disability benefits. Plaintiff brings this instant action under 42 U.S.C. § 405(g) seeking remand of the Commissioner's decision. For the reasons set forth below, the decision is reversed and remanded for further review.

### I. Background

Tracy Lemay stopped working as a painter around 2008 because of back pain that radiated down her right leg. Pl.'s Br., ECF No. 9, 1. At that time, her symptoms made personal care activities like dressing herself, doing her hair, and shaving difficult. *Id.* Lemay's symptoms worsened over time. *Id.* In September 2014, Lemay jumped out of a third-story window – an apparent suicide attempt – and suffered significant injuries which led to hip replacement surgery. *Id.* at 3. During the same period, Lemay was also having difficulty using her hands because of carpal tunnel syndrome and arthritis, and she was abusing alcohol. *Id.* at 1-3.

Lemay first applied for disability benefits in December 2011 and was denied. *Id.* at 1. She did not appeal that decision. *Id.* On December 10, 2013, Lemay again applied for disability insurance benefits and supplemental security income and was denied at the initial and

1

reconsideration levels. *Id.* On January 19, 2016, a hearing was held before Administrative Law Judge ("ALJ") Kevin Plunkett of the Social Security Administration. *Id.*

In a March 2, 2016 written decision, the ALJ denied Lemay's request for disability benefits. *Id.* The ALJ applied the five-step evaluation process required by 20 C.F.R. § 404.1520. *See* ALJ's March 2, 2016 decision, ECF No. 6-3, 20-35. The ALJ determined that Lemay had shown that she was not engaged in substantial gainful employment (step one) and that she had several impairments considered severe (step two), including lumbar and cervical degenerative disc disease and a history of arthritis/tendonitis of the wrists/hand. *Id.* at 24. However, the ALJ concluded that the medical evidence did not show the Lemay had "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in any SSA listings, and the ALJ proceeded to step four of his analysis. *Id.* at 26-27. The ALJ went on to conclude that Lemay had a residual functional capacity ("RFC") to perform light work, meaning that she could sit for a total of six hours, and stand or walk in combination for a total of six hours, in an eight-hour workday, with normal breaks. *Id.* at 27. Also, as the ALJ concluded, Lemay could lift and carry up to 20 pounds occasionally and 10 pounds frequently, handle and finger frequently bilaterally, could occasionally be exposed to extreme heat or cold and dust, odors, fumes, and pulmonary irritants, and could occasionally climb ramps or stairs and stoop, kneel, crouch, and crawl. *Id.* Although Lemay had no past relevant work, the ALJ consulted a vocational expert who testified that given Lemay's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of light, unskilled occupations, such as mail clerk or quality control clerk. *Id.* at 34. Thus, the ALJ concluded Lemay was not disabled based on the factors listed in step five test.

## II. Discussion

Lemay raises three issues on appeal. First, she argues that the ALJ failed to consider the combination of her impairments throughout his analysis. ECF No. 9, 4. Second, Lemay argues that

the ALJ failed to consider evidence that she had abutment of her exiting L4 nerve root in his analysis in step three about whether her impairments met or equaled the criteria of Listing 1.04. *Id.* at 4-5. And third, she challenges the ALJ's determination that her residual functional capacity allows her to perform light work and handle and finger frequently bilaterally. *Id.* at 5-6. The following sections discuss each issue in turn.

### A. ALJ's evaluation of Lemay's combination of impairments as "severe".

As previously mentioned, an ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits as required by 20 C.F.R. § 404.1520. Step two requires the ALJ to consider whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 404.1520(c) and 416.920(c). Here, the ALJ concluded the following:

> The claimant has the following severe impairments: lumbar and cervical degenerative disc disease (DDD), status post hip fracture/hip replacement, asthma/COPD, and history of arthritis/tendonitis of the wrists/hands (20 CFR 404.1520(c) and 416.920(c)).

ECF No. 6-3, 24.

Lemay argues that the ALJ failed to consider whether all of her impairment, considered in combination, would qualify as "severe." ECF No. 9, 4. She contends the ALJ should have considered – in addition to nerve root impingement in the lumbar spine – her hip replacement surgery, numbness in both of her legs, pain with ambulation, and difficulty using her hands because of a fracture in the right metacarpal and a peripheral tear in her right wrist. *Id.* Although Lemay does not argue other specific conditions were overlooked, the Court notes that Lemay also has a history of depression (*see* ECF No. 6-3 at 24, 28, 30, 33), alcoholism (*see id.* at 24, 29-31, 33), asthma/COPD (*see id.* at 32), is mildly anxious (*see id.* at 24, 33), is overweight/obese (*see id.* at 24), and a possible dependency on prescription pain medication (*see id.* at 30).

3

The Seventh Circuit, as well as other circuits, has routinely held that administrative law judges must consider an applicant's medical problems in combination. *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (citing string of cases). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). Although the ALJ noted that Lemay has four "severe" impairments, the ALJ did not consider the combined effect of those impairments, or how her "non-severe" impairments (such as obesity, depression, anxiety, or substance abuse) may have adversely affected her other conditions when considered collectively. *See* ECF 6-3, 24-26. For example, Lemay is considered overweight/obese. Like the claimant in *Goins*, Lemay can walk. 764 F.3d at 681. Her weight is not disabling, in itself. But, when considered in combination with Lemay's DDD, hip replacement, numbness in her legs, and her asthma, the collective impact could be considered severe.

Nor did the ALJ provide any analysis regarding the interaction of Lemay's many physical impairments with her mental health and substance abuse. As the Seventh Circuit has advised "[e]ven if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling." *Martinez v. Astrue*, 630 F.3d 693, 697-98 (7th Cir. 2011). The ALJ gives little weight to the reviewing Disability Determination Services psychological consultant, Dr. DiFonso, who opined that Lemay's mental health issues cause "moderate" limitations, because Dr. DiFonso "seemed to rely on" Lemay's suicide attempt, which the ALJ found "to be an isolated event that does not show longitudinal severity." ECF No. 6-3, 25. Lemay's depression and alcohol abuse were objectively serious enough to cause her to throw herself out of a window in September 2014. *See* ECF No. 6-3, 30. The ALJ did not provide analysis of how he reached this conclusion, or why he considered *longitudinal* severity significant in the context of a suicide attempt. Remand is required for further development of the ALJ's analysis.

4

**B. The ALJ's Listing 1.04 Analysis**

Step three requires the ALJ to "consider the medical severity of [the] impairment[s]" to determine if the claimant has an impairment (or combination of impairments) that meets or equals an impairment found in the Listing of Impairments in appendix 1 of subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment rises to this level, she earns a presumption of disability. *Berger v. Astrue*, 516 F.3d 539, 543 (7th Cir. 2008). If the impairments fall short, the ALJ proceeds to step four.

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin,* 775 F. 3d 929, 935 (7th Cir. 2015). The Listings specify the criteria for qualifying impairments. *Id.* (citing 20 C.F.R. § 404.1525(a)). Lemay argues the ALJ committed error by failing to consider evidence that was required to meet or equal the criteria of Listing 1.04.

Listing 1.04 describes spinal disorders (including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, and vertebral fractures), resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. It also requires, in relevant part, the following:

> "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test."

*Id.* The ALJ determined that Lemay did "not have an impairment or combination of impairments that meets or exceeds or medically equals the severity" of any listed impairments. ECF No. 6-3, 26. In determining Lemay's lumbar and cervical spine degenerative disc disease ("DDD") did not meet or equal Listing 1.04, the ALJ stated the following:

5

> As I show in the summary of the medical evidence in this case below, the claimant has severe lumbar and cervical spine DDD with low back and neck pain, but there is no evidence in the record of severe spine stenosis, or nerve root compression in the spine.

*Id.* Lemay contends that the ALJ incorrectly asserted that she had no evidence of nerve root compression in the spine, ignoring evidence that she had abutment of the exiting L4 nerve root in her spine. Lemay points to the fact the ALJ did not mention Lemay's December 2014 MRI that showed abutment of her exiting L4 nerve root as evidence of nerve root compression in the step-three analysis.

The Government concedes that the ALJ did not discuss this evidence to reach a decision in step three. Def.'s Br., ECF No. 14, 3. However, the Government contends that even though the ALJ did not discuss Lemay's abutment in the Listings section of the decision, the ALJ "considered and discussed" this evidence while assessing Lemay's residual functional capacity in the next section of the decision. *Id.* The Government argues that the ALJ's decision must be read as a whole and his findings from one part of his decision may be imputed to another. *Id.* Although the Court shall consider analysis from other parts of the ALJ's decision, *Summers v. Colvin*, 634 F. App'x 590, 594 (7th Cir. 2016), the ALJ's reference to this evidence is not as part of his analysis of whether Lemay's impairments met or equaled a Listing, but rather is part of a chronological description of Lemay's medical treatments and findings, offered to determine Lemay's credibility with respect to the intensity, persistence, and limiting effects of her symptoms. ECF No. 6-3, 28-32. The ALJ's decision states the following:

> In December 2014, orthopedist Dr. Mark Barba who performed the hip replacement surgery ordered an MRI of the lumbar spine. It showed mild grade I retrolisthesis at L5-S1, mild disc space loss at L4-L5 and L5-S1, all similar to previous findings. However, there was degenerative endplate edema or swelling and marrow edema. There was moderate right neural foraminal narrowing and *abutment* of the exiting L4 nerve rook (Exhibits 11F/1; and 16F/18).

*Id.* at 30 (emphasis added).

The ALJ's restatement of the evidence is inadequate to dismiss an impairment outright and is an example of perfunctory analysis not to be upheld. *Minnick,* 775 F.3d at 935-36; *see also Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (reversing an ALJ's decision denying benefits when Listing analysis was "devoid of any analysis that would enable meaningful judicial review."). When an ALJ recommends that the agency deny benefits, it must "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Equally as important as the evidence that is considered, an ALJ must explain why contrary evidence does not persuade the decision. *Id.* The ALJ provided no basis for disregarding the evidence of Lemay's abutment of her exiting L4 nerve root.

In response, the Government argues that "abutment of an exiting nerve root" and "compression of nerve root in the spine" have different meanings according to the Merriam-Webster Dictionary and online medical publications. ECF No. 14, 2-3. The Government also notes that the MRI specifically used the word "abutment" instead of "compression." *Id.* at 2. Even so, at a minimum, courts have required the ALJ to discuss evidence of claimants' nerve root abutment and include an explanation of why this evidence was not persuasive in the context of Listing 1.04. *See e.g., Terry v. Colvin*, No. 4:13-cv-00100-TWP-WGH, 2014 U.S. Dist. LEXIS 127828, at *18 (S.D. Ind. Sept. 12, 2014), *Allen v. Berryhill*, No. 16-10154, 2017 U.S. Dist. LEXIS 120109, at *9 (E.D. Mich. May 9, 2017). When an ALJ does not articulate a reason for dismissing such evidence in their analysis, courts have remanded the decision for further review. *See e.g., Reynolds v. Colvin,* No. 3:13cv1354, 2015 U.S. Dist. LEXIS 8246, at *23-24 (N.D. Ind. Jan. 23, 2015); *Spaulding v. Astrue,* No. C10-1749-MJP-JPD, 2011 U.S. Dist. LEXIS 129907, at *26 (W.D. Wash. Oct. 18, 2011); *Artis v. Berryhill*, No. 5:17-CV-387-FL, 2018 U.S. Dist. LEXIS 126495, at *13 n.3 (E.D. N.C. July 30, 2018) (District Court rejects memorandum and recommendation where magistrate judge found abutment

7

differs from compression, holding that it is the ALJ, not the court, who has the responsibility to make these findings of fact).

The Government argues it is Lemay's burden to prove her condition meets or equals a listed impairment. ECF No. 14, 2. It is true that a claimant bears the burden of proving her condition meets or equals a listed impairment, *see Knox v. Astrue*, 327 Fed. App'x 652, 655 (7th Cir. 2009), *Ciaffarafa v. Berryhill,* No. 17 CV 50168, 2018 U.S. Dist. LEXIS 141881, at *8 (N.D. Ill. Aug. 21, 2018), and if the ALJ's decision is supported by substantial evidence, this Court will affirm. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). But "[t]hat does not mean, however, that [the Court is] a rubber stamp." *Brinley v. Berryhill*, 732 Fed. App'x 461, 465 (7th Cir. 2018). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Scrogham,* 765 F.3d at 695. Additionally, "the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.* Courts have cited to the claimant's burden when affirming ALJ decisions denying benefits where the ALJ has included a discussion of their analysis in reaching their conclusion. *See e.g. Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (included a discussion of his reasons for concluding that claimant's IQ score was invalid); *Jones v. Colvin*, No. 09 C 7645, 2013 U.S. Dist. LEXIS 50382, at *23-24 (N.D. Ill. Apr. 8, 2013) (ALJ cited evidence in the record to support finding that right ankle repair is not a disabling impairment); *Schoenfeld v. Colvin*, No. 15 C 267, 2016 U.S. Dist. LEXIS 29203, at *6 (N.D. Ill. Mar. 8, 2016) (ALJ considered the opinions of the State Agency medical consultants in addition to his own analysis).

Ultimately, it is unclear from the record whether the ALJ considered Lemay's abutment of her exiting L4 nerve root in determining there was no evidence of compression of the nerve root in the spine for purposes of Listing 1.04. ALJs have a duty to, at least, minimally articulate their justification for rejecting or accepting specific evidence of a disability. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). Here, the ALJ has come up short of fulfilling this duty and, therefore must

8

further develop the record regarding Lemay's allegation that her December 2014 MRI reveals evidence of nerve root compression.

Next, even if the ALJ had considered Lemay's abutment of her exiting L4 nerve root as evidence of nerve root compression for Listing 1.04, the Government argues Lemay would still fail to establish that her impairments meet or medically equal Listing 1.04 because the listing contains alternative criteria that Lemay did not satisfy. ECF No. 14, 2. "[T]he claimant must satisfy all of the criteria of the listed impairment." *Scheie v. Berryhill,* No. 16 CV 9012, 2018 U.S. Dist. LEXIS 56032, at *20 (N.D. Ill. Apr. 2, 2018) (citing *Rice,* 384 F.3d at 369). The Government points out that Lemay has focused her arguments on Listing 1.04(A), which contains these requirements:

> "Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App'x 1. Listing 1.04(A). Although the Government contends the ALJ's analysis included a discussion of Lemay's straight-leg raising tests, *see* ECF No. 14, 3-4, nothing in the record indicates that the ALJ considered evidence relating to Listing 1.04 once he determined that Lemay had not presented evidence of nerve root compression. There is no discussion in the record about "limitation of motion of the spine" or "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." The ALJ briefly noted Lemay's positive straight-leg tests in the RFC discussion, regarding the results as inconsistent, but did not determine whether some positive straight-leg tests would be enough to meet or medically equal the criteria for Listing 1.04. Similar to the ALJ's decision in *Minnick,* which failed to acknowledge evidence that could have been indicative of nerve root compression, in conjunction with positive straight-leg tests, the Court "cannot discern from the ALJ's scant analysis whether []he considered and dismissed, or completely failed to consider, this pertinent evidence."

9

775 F.3d at 936. Thus, the ALJ erred by failing to build the necessary logical bridge from the evidence to the conclusion. *See id.*

### C. The ALJ's RFC findings

If a claimant does not meet or medically equal all the criteria in a Listing, an ALJ must continue to step four to examine the claimant's "residual functional capacity" or "RFC." Essentially, a claimant's RFC is the type of things she can still do physically, and is considered in determining whether she can perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If she cannot (or she has no past relevant work), the ALJ determines in step five whether the claimant can do any other work in the economy, given her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

Here, the ALJ concluded at step four that Lemay retained the RFC to perform light work, finding that she possessed these abilities:

> "she can sit for a total of six (6) hours, and stand or walk in combination for a total of six (6) hours, in an eight-hour workday, with normal breaks, and she can lift and carry up to 20 pounds occasionally and 10 pounds frequently, except: the claimant can handle and finger bilaterally; the claimant can occasionally be exposed to extreme heat, extreme cold, and dust, odors, fumes, and pulmonary irritants; the claimant can never climb ladders, ropes, or scaffolds; the claimant can occasionally climb ramps or stairs, and stoop, kneel, crouch, and crawl."

ECF No. 6-3, 27. At step five, the ALJ concluded that for someone with the identified limitations, there are jobs available in the national economy. *Id.* at 34.

Lemay raises three issues with the ALJ's finding of her RFC: (1) she argues that the ALJ did not support his finding that she could perform light work because it is unclear how the ALJ determined she could be on her feet for the majority of the work day, *see* ECF No. 15, 2; (2) the ALJ did not explain how she could frequently, as opposed to occasionally or less, use her hands while working, *see* ECF No. 9, 5-6; and (3) the ALJ again did not consider the combination of her impairments when determining her RFC, *see* ECF No. 15, 1. The Government contends the ALJ

considered all the evidence in the record, but in general, Lemay did not meet her burden to show more restrictive RFC was required. ECF No. 14, 4.

Lemay argues that she is "doubtful" she could complete light work, *see* ECF No. 9, 5, and the ALJ's RFC analysis is insufficient, *see id.* at 6. However, the Government contends that Lemay does not state what RFC finding would be more appropriate or cite any medical opinion supporting a more restrictive RFC. ECF No. 14, 5. This Court must decide whether the ALJ's RFC decision is supported by substantial evidence. 42 U.S.C. § 405(g); *see also Egly v. Berryhill*, No. 18-1030, 2018 U.S. App. LEXIS 22831, at *8 (7th Cir. Aug. 18, 2018). As the Supreme Court explained in *Richardson v. Perales*, 402 U.S. 389 (1971), this standard requires more than "a mere scintilla" of proof. *Id.* at 401. Instead "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" must be included in the ALJ's decision. *Id.* But, this Court will not reweigh the evidence or substitute our judgment for that of the ALJ. *Egly,* 2018 U.S. App. LEXIS 22831, at *9.

Unlike other sections of the ALJ's decision, here the ALJ provided a lengthy description of Lemay's prior relevant medical history and specifically considers medical opinions from treating sources. ECF No. 6-3, 27-33. Specifically, the ALJ cited that no medical opinion from a treating source suggested that a more restrictive RFC was necessary. *Id.* at 32. This analysis provides the Court enough to meet the "reasonable mind" standard for supporting the ALJ's conclusion of an RFC of light work.

Lemay suggests that the ALJ should have had a medical expert testify rather than reach his own conclusion about Lemay's RFC. ECF No. 9, 6. But the Government argues the ALJ is not required to contact a medical expert and doing so is within his sole discretion. ECF No. 14, 10. There is no duty to seek additional evidence unless the evidence received is inadequate to allow the ALJ to reach a conclusion about whether the applicant is disabled. *See* 20 C.F.R. § 404.1527(c)(3) (providing that ALJ "will try to obtain additional evidence" when "the evidence is consistent but we

do not have sufficient evidence to decide whether you are disabled"); *see also Sutton v. Barnhart*, 183 Fed. App'x 555, 560 (7th Cir. 2006); *cf. Barnett v. Barnhart,* 381 F.3d 664, 669 (holding that ALJ must seek clarification of medical opinions where detail is lacking and must seek updated medical records). In this case, there was no reason for the ALJ to think any evidence was missing. To require the ALJ to seek more information under these circumstances would be to shift the burden that belongs to Lemay. *Sutton*, 183 Fed. App'x at 560.

The Government also argues that even if the ALJ erred in finding that Lemay could perform more than sedentary work, the error was harmless. ECF No. 14, 7. The error would not change the ALJ's determination that Lemay was not disabled because the ALJ noted that "the vocational expert found other work available, even . . . assuming for the sake of argument, that the claimant was limited to…sedentary work due to severe physical impairments." ECF No. 6-3, 35. Harmless-error review applies here, as in all social security cases. *Egly,* 2018 U.S. App. LEXIS 22831, at *10. Thus, Lemay cannot show that a more restrictive RFC – from light work to sedentary work – would have resulted in a different conclusion on her ability to work.

Next, Lemay argues that the ALJ provides no analysis for the RFC of her hands. The ALJ concluded the following about Lemay's hands and wrists:

> "Further, due to a history of arthritis/tendonitis of the hand/wrists, the claimant can frequently, but not constantly, perform handling and fingering."

ECF No. 6-3, 32. In its response, the Government contends that the ALJ's RFC determination for Lemay's hands and wrists was more restrictive than any medical opinion in the record. ECF No. 14, 8. But that explanation comes only from the Government on appeal, not from the ALJ in his decision. Rather, the decision cites no evidence in the record to support the RFC. In considering the record before the Court, it is unclear how the ALJ concluded that Lemay could *frequently*, as opposed to occasionally or less than occasionally, use her hands. ECF No. 9, 5-6. Here, the ALJ provides a recap of Lemay's treatment and symptoms and then reaches an independent conclusion,

again without a logical bridge from the evidence to the conclusion. Rather, "[t]he RFC determination should include a discussion describing how the evidence, both objective and subjective, supports the ultimate conclusion." *Nelson v. Berryhill*, No. 16 C 7547, 2018 U.S. Dist. LEXIS 6482, at *12-13 (N.D. Ill. Jan. 16, 2018). "An ALJ is not allowed to 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Id.* at *13 (citing *Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010)). Thus, the ALJ erred by making independent findings without medical evidence to support them. *See Busse v. Berryhill*, No. 16 C 11084, 2018 U.S. Dist. LEXIS 74548, at *33 (N.D. Ill. May 2, 2018).

Finally, Lemay argues that once again the ALJ did not consider the combination of her impairments in reaching the RFC conclusion. ECF No. 15, 1. Lemay contends that the ALJ could not have properly considered the combination of her impairment as this evidence was not properly considered at step two of his analysis. *Id.* at 1-2. As this Court noted before, an ALJ must consider all of a claimant's impairments, alone and in combination with one another. *See supra*, § A. An RFC determination is no different. *See* 20 C.F.R. § 404.1545(a)(2); *see also Richison v. Astrue*, 462 Fed. App'x 622, 626 (7th Cir. 2012).

For the foregoing reasons, Plaintiff's motion is granted; the Government's motion is denied; and the decision of the ALJ is remanded for further review.

Date: October 18, 2018     By: _____
                                Iain D. Johnston
                                United States Magistrate Judge

13